**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

ERIC B. SMITH,

        **Plaintiff,**

                                       **Civil Action 2:18-cv-577**
                                       **Judge George C. Smith**
      **v.**                              **Magistrate Judge Chelsey M. Vascura**

COMMISSIONER OF SOCIAL SECURITY,

        **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Eric B. Smith ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for a period of disability benefits and disability insurance benefits.   This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 8), the Commissioner's Response in Opposition (ECF No. 13), Plaintiff's Reply (ECF No. 18), and the administrative record (ECF No. 7).   For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

## I.     BACKGROUND

Plaintiff protectively filed his application for a period of disability and disability insurance benefits on February 10, 2015.   Plaintiff alleged a disability onset date of February 1, 2015.   Plaintiff's application was denied initially on July 14, 2015, and upon reconsideration on November 17, 2015.   Plaintiff sought a hearing before an administrative law judge.

Administrative Law Judge Jeannine Lesperance (the "ALJ") held a hearing on September 28, 2017, at which Plaintiff, represented by counsel, appeared and testified. Vocational expert Connie O'Brien-Heckler (the "VE") also testified at the hearing. On December 7, 2017, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. On April 11, 2018, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. Plaintiff then timely commenced the instant action.

In his Statement of Errors (ECF No. 8), Plaintiff raises two issues. Plaintiff first asserts that the ALJ erred in finding that his mental impairments were not severe. Plaintiff asserts that this error was not harmless because the ALJ failed to take his mental impairments into account in assessing his residual functional capacity ("RFC") and in posing the hypothetical to the VE to determine whether he could perform his past work. Plaintiff next asserts that the ALJ failed to provide good reasons for discounting the opinion of his treating physician, Christopher Osbourne, D.O. ("Dr. Osbourne"), regarding his physical impairments.

## II.    RELEVANT MEDICAL EVIDENCE

### A.    Evidence Relating to Plaintiff's Alleged Physical Impairments

#### 1.   State-Agency Reviewing Physicians

Gail Mutchler, M.D. ("Dr. Mutchler"), a reviewing physician for the social security administration, found that Plaintiff could occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk about 6 hours in an 8-hour workday; and sit about 6 hours in an 8-hour workday. (R. at 107.) Dr. Mutchler opined that Plaintiff was not limited in his ability to push and/or pull beyond his limitations in lifting and/or carrying. (R. at 108.)

She further found that Plaintiff could occasionally climb ramps/ stairs, stoop, and crouch; never climb ladders/ropes/scaffolds; and could frequently balance, kneel, and crawl. (*Id.*) Dr. Mutchler opined that Plaintiff was limited to frequent handling and fingering on the right side. (R. at 109.) She also opined that Plaintiff should avoid concentrated exposure to extreme cold and heat and should avoid all exposure to hazards such as machinery, heights, etc. (*Id.*) On reconsideration, reviewing physician Anton Freihofner, M.D., adopted the findings of Dr. Mutchler. (R. at 123-25.)

### 2. Christopher Osbourne, D.O.

Dr. Osbourne completed an evaluation form on Plaintiff's behalf. (R. at 559-60.) He noted that he first treated Plaintiff on June 8, 2015, and last treated him on October 14, 2015. (R. at 559.) Dr. Osbourne diagnosed Plaintiff with low back pain, hypertension, lumber and cervical degenerative joint disease, and diabetes mellitus type 2. (*Id.*) Dr. Osbourne noted that on clinical examination, Plaintiff was ambulating with a cane, had positive straight-leg raising bilaterally, and tenderness to palpation. (*Id.*) He further noted that an MRI of Plaintiff's lumbar spine revealed left foraminal narrowing at L5-S1 related to broad-based disc protrusion and that an MRI of Plaintiff's cervical spine showed congenital spinal stenosis with degenerative changes and disc bulges. (*Id.*) He also cited to CT and EMG results from 2015. (*Id.*) Dr. Osbourne opined that Plaintiff would be unable to lift greater than 20 pounds; to stand and/or sit for over 1 hour at a time; and that Plaintiff has difficulty walking up stairs due to gait instability. (R. at 560.)

**B.    Evidence Relating to Plaintiff's Alleged Mental Impairments**

**1.  Treating Physician, Boris Valdman, M.D.**

On March 12, 2014, Boris Valdman, M.D. ("Dr. Valdman") diagnosed Plaintiff with depression.  (R. at 400.)   On July 24, 2014, he noted that Plaintiff had mood swings and anxiety.  (R. at 393.)   On January 28, 2015, Plaintiff reported that he was depressed and wants to sleep all the time.  (R. at 388.)   On February 4, 2015, Dr. Valdman noted that Plaintiff had abnormal mood and affect.  (R. at 391.)

**2.  Consultative Examiner Scott Olenick, Ph.D.**

On June 17, 2015, Scott Olenick, Ph.D., ("Dr. Olenick") performed a consultative psychological evaluation on Plaintiff related to his claim for disability benefits.  (R. at 533.) On examination, Dr. Olenick noted that Plaintiff was alert and oriented to time, location, and person.  (R. 536.)   He noted, however, that Plaintiff "tended to lose track of [ ]his thoughts and not finish complete ideas verbally."  (*Id*.)   Plaintiff denied any history of hallucinations.  (*Id.*) Dr. Olenick found that Plaintiff's "affect was sad and dysphoric, consistent with his reported mood."  (*Id*.)   He further noted that Plaintiff "cried often during the evaluation when he discussed his brother's death, his increasing health problems, and his inability to support his family."  (*Id*.)   Dr. Olenick found Plaintiff's cognitive functioning to be in the average range. (R. at 537.)

Dr. Olenick diagnosed Plaintiff with moderate major depressive disorder, recurrent, with anxious distress.  (*Id*.)   He noted that Plaintiff's stressors included "his inability to work, his mother's ailing health, his brother's death two years ago, and financial instability. . . ."  (*Id*.) Dr. Olenick opined that because Plaintiff is not working, the "likelihood of significant

improvement in symptom resolution is low, whereas the possibility for significant deterioration is high." (*Id*.) Dr. Olenick thought psychotropic medication and outpatient mental health services could help improve Plaintiff's mood. (R. at 537-38.)

Dr. Olenick also completed a functional assessment. (R. at 538-39.) He opined that Plaintiff is "not expected to demonstrate problems in understanding, remembering, and carrying out instructions in a work setting," and "will not demonstrate difficulty in responding appropriately to supervision and coworkers in a work setting." (R. at 538-39.) Regarding Plaintiff's ability to maintain attention, concentration, persistence, and pace to perform simple and multi-step tasks, Dr. Olenick opined as follows:

> [Plaintiff's] attention and concentration were poor today. He described problems with attention and concentration outside this appointment. [Plaintiff] was not distracted by ambient noises or objects in the office, but would lose track of his thought process and would not finish his thoughts. He is expected to demonstrate limitations in this area.

(R. at 538.) With respect to his abilities and limitations in responding appropriately to work pressures, Dr. Olenick found that:

> [Plaintiff] did not describe difficulty in dealing with workplace stress. When asked how he deals with stress, he responded, "Think it through." He has participated in outpatient mental health treatment; he takes no psychotropic medication. He has adequate social support and appeared to cope appropriately with stress during the evaluation. He may experience difficulty responding appropriately to work pressures due to his physical pain and limitations as well as his increasing symptoms of depression.

(R. at 539.)

### 3. State-Agency Reviewing Psychologists, Carl Tishler, Ph.D. and Aracelis Rivera, Psy.D.

State-agency reviewing psychologist, Carl Tishler, Ph.D., ("Dr. Tishler") gave "Great Weight" to Dr. Olenick's opinions, finding that "Dr. Olenick's suggestions are consistent with

his observations and claimant's reports." (R. at 107.) Dr. Tishler found that Plaintiff's depression was non-severe and opined that his "depression/affective disorder is not expected to cause significant work limitations." (R. at 106.) In reaching this conclusion, Dr. Tishler considered that Plaintiff performs activities of daily living and visits with family; is not currently in treatment for any mental health issue; has no history of psychiatric hospitalizations; has a long work history of no problems with co-workers and only one issue with a supervisor related to physical limitations; drives as needed; mowed his lawn the day before his psychiatric consultative examination; was a supervisor for many years; and has a history of drug and alcohol usage "and must have at least contact and friends from whom he obtains the substances." (R. at 106.) Dr. Tishler found that Plaintiff has mild restrictions in his activities of daily living; mild difficulties in maintaining concentration, persistence, or pace; and no difficulties in maintaining social functioning. (R. at 105-06.) Dr. Tishler declined to include mental limitations in Plaintiff's RFC. (R. at 105-107.) On reconsideration, Aracelis Rivera, Psy.D., adopted Dr. Tishler's opinions. (R. at 121.)

### 4. Treating Psychologist, James E. Gebhart, Ph.D.

On November 1, 2017, James E. Gebhart, Ph.D., conducted a mental health evaluation on Plaintiff and began psychotherapy treatment. (R. at 772.) In a letter to Plaintiff's attorney, Dr. Gebhart stated that Plaintiff's "major depression has persisted for over three years and requires a regimen of Cymbalta." (*Id.*) Dr. Gebhart noted that Plaintiff "is burdened with the grief of four family deaths in recent times," and that "[h]is stresses are exacerbated by his wife leaving the home and by the fear that his home will be repossessed because he has not been able to work and pay bills." (*Id.*) Dr. Gebhart diagnosed Plaintiff with severe persistent depressive disorder

with persistent major depressive episode. (*Id.*) On mental examination, Plaintiff's mood and affect were "[v]ery depressed, sad, and defeated," and his affect was "flat" and "deadened." (*Id.* at 773.) Regarding his attention and concentration, Dr. Gebhart noted that Plaintiff had a "[s]trained tendency to momentarily lose line of thought because of pervasive depression and fatigue." (*Id.*) Dr. Gebhart opined that Plaintiff's insight and judgment were limited. (*Id.*)

### 5. Columbus Springs East

On September 15, 2017, Plaintiff presented to Columbus Springs East for a psychiatric screening assessment. (R. at 755.) Plaintiff reported increased stress and that he was unable to work. (*Id*.) He further reported that he had increased depression; was sleeping constantly; had decreased energy; had decreased interest in activities; that he saw UFOs and "weird" things happening around the house; was having "communications" in his head; and was feeling confused. (R. at 755.) Plaintiff reported delusions and hallucinations. (R. at 758.) On mental status examination, Plaintiff was *not* noted to have poor concentration. (R. 765.) He was noted to have poor hygiene; his mood/affect was anxious, sad, depressed/hopeless/helpless; and he exhibited depressed behavior. (*Id.*) Plaintiff was referred to partial hospitalization, and it was noted that his "[s]ymptoms/behaviors manifest to such severity that there is interference with social, family, or vocational functioning" and that there was a "moderate deterioration of usual level of functioning." (R. at 767.) Plaintiff did not complete the recommended treatment. He returned to Columbus Springs East on October 10, 2017, and reported that he was unable to complete the programming due to financial and transportation issues. (R. at 768.) At that time, he denied current delusions and hallucinations, but stated he had them 6 months prior. (R. at 771.)

### 6.  Kathleen J. Skubak, CNP

On September 1, 2017, Plaintiff established care with Kathleen J. Skubak, CNP ("Nurse Practitioner Skubak").   Nurse Practitioner Skubak noted that Plaintiff had "some depression for years" and that Cymbalta has "improved this overall."   (R. at 747.)   On examination, she noted as follows: "He has a normal mood and affect.   His behavior is normal.   Judgment and thought content normal."   (*Id*.)   She further noted that he was not nervous or anxious.   (*Id.*)

## III.     THE ADMINISTRATIVE DECISION

On December 7, 2017, the ALJ issued her decision.   (R. at 15-29.)   At step one of the sequential evaluation process,[1]  the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 1, 2015, the alleged onset date.   (*Id.* at 17.)

---

[1.]  Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.   *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.  Is the claimant engaged in substantial gainful activity?

2.  Does the claimant suffer from one or more severe impairments?

3.  Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4.  Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5.  Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

At step two, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease of the lumbar and cervical spine; right ankle degenerative joint disease; right carpal tunnel syndrome; obstructive sleep apnea; restless leg syndrome; type II diabetes mellitus; and obesity.   (*Id.* at 18.)   The ALJ further found that Plaintiff's hypertension, cluster headaches, and depression are non-severe because "the evidence does not support that these conditions, either singly or in combination, cause more than minimal functional limitations."   (*Id.*)   Regarding Plaintiff's depression, the ALJ found that there is "very little evidence of psychiatric issues from the alleged onset date through the hearing date (Exhibits 1F-19F)."   (R. at 19.)   In determining that Plaintiff's depression is non-severe, the ALJ considered the "paragraph B" criteria.   (*Id.*) The ALJ found that Plaintiff has *no* limitations in understanding, remembering, or applying information; in interacting with others; or in adapting or managing himself.   (R. at 19-20.)   She found that Plaintiff has *mild* limitations in concentration, persistence, or in maintaining pace. (R. at 20.)   The ALJ concluded that Plaintiff's mental impairment is non-severe because it causes no more than "mild limitation" in any of the functional areas.   (*Id.*)

In concluding that Plaintiff's mental impairment is non-severe, the ALJ assigned "partial" weight to the opinions of the state-agency reviewing psychologists, finding their opinions that Plaintiff "has no limitations in social functioning and mild limitations in concentration, persistence or pace in addition to the overall conclusion that the claimant's mental impairment is nonsevere are generally consistent with the overall evidence, including the claimant's self-reports of daily functioning . . ."   (R. at 21.)   The ALJ gave "great" weight to consultative examiner Dr. Olenick's opinion that Plaintiff "was unlikely to demonstrate problems in understanding, remembering and carrying out instructions in a work setting or responding

appropriately to supervision and coworkers," and "little" weight to his opinion that Plaintiff "may experience difficulty responding appropriately to work pressures and would likely demonstrate limitations in maintaining attention, concentration, persistence and pace to perform simple tasks." (*Id*.) The ALJ also gave "little" weight to treating psychologist Dr. Gebhart's statement that Plaintiff "was struggling to maintain his daily life and that the [his] major depression has persisted for over 3 years," and "some" weight to his mental examination findings. (*Id*.)

At step three of the sequential process, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 21-23.) At step four, the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can occasionally climb ramps or stairs, stoop, kneel, crouch, crawl, balance and push/pull with the right lower extremity; frequently handle and finger on the right; can never climb ladders, ropes or scaffolds; cannot work around unprotected heights or be exposed to extreme temperatures.

(R. at 23.) In assessing Plaintiff's physical RFC, the ALJ assigned "partial" weight to the state-agency reviewing physicians' opinions. (R. at 27.) She assigned "some" weight to Dr. Osbourne's opinion that Plaintiff "is unable to lift greater than 20 pounds and has difficulty walking up stairs," and "little" weight to his opinion that Plaintiff "requires a cane" and is "unable to stand and/or sit for over 1 hour at a time." (*Id*.)

Relying on the VE's testimony, the ALJ found that Plaintiff can perform his past relevant work as a customer service trainer, collections manager, and pawn broker. (R. at 28.) She

10

therefore concluded that Plaintiff was not disabled under the Social Security Act.   (*Id.*)

## IV.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"   *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").   Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"   *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.   The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.   *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).   Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'"   *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and

where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## V.      ANALYSIS

As set forth above, Plaintiff advances the following two contentions of error: (1) the ALJ erred in finding that his mental impairments were not severe, and (2) the ALJ failed to provide good reasons for discounting the opinions of treating physician, Dr. Osbourne.   The undersigned considers Plaintiff's contentions of error in turn.

### A.      The ALJ's Consideration of Plaintiff's Mental Impairments

Plaintiff first contends that the ALJ erred in finding that his depression was non-severe and in omitting non-exertional limitations from his RFC.   Plaintiff asserts that the ALJ's conclusions regarding his mental impairments are inconsistent with the opinions of Drs. Olenick and Gebhart and the mental health record as a whole.   (Pl.'s Statement of Errors at 7, ECF No. 8.)   Plaintiff further contends that the ALJ's failure to find his depression severe at step two is not harmless error because the ALJ subsequently failed to include non-exertional limitations in his RFC and in the hypothetical to the VE when determining whether he could perform his past work.

The Commissioner counters that the ALJ's step-two findings are supported by substantial evidence and that Plaintiff failed to meet his burden of showing that his alleged mental health impairments affect him more than minimally.   (Response in Opp. at 3, 10, ECF No. 13.)   The undersigned agrees with the Commissioner and finds Plaintiff's first contention of error to be without merit.

At step two of the sequential evaluation process, Plaintiff bears the burden of proving the existence of a severe, medically determinable impairment that meets the twelve-month durational requirement. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Harley v. Comm'r of Soc. Sec.*, 485 F. App'x 802, 803 (6th Cir. 2012). The United States Court of Appeals for the Sixth Circuit has construed a claimant's burden at step two as "a *de minimis* hurdle in the disability determination process." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). The inquiry is therefore "employed as an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint." *Id.* at 863 (quoting *Farris v. Sec'y of Health & Hum. Servs.*, 773 F.2d 85, 90 n.1 (6th Cir. 1985)).

A severe impairment is defined as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities," 20 C.F.R. § 404.1520(c), and which lasts or can be expected to last "for a continuous period of not less than 12 months," 20 C.F.R. 404.1509. "A severe mental impairment is 'established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a plaintiff's] statement of symptoms.'" *Griffith v. Comm'r*, 582 F. App'x 555, 559 (6th Cir. 2014) (quoting 20 C.F.R. § 416.908). Thus, if no signs or laboratory findings substantiate the existence of an impairment, it is appropriate to terminate the disability analysis. *See* SSR 96-4p, 1996 WL 374187, at *2 (July 2, 1996) ("In claims in which there are no medical signs or laboratory findings to substantiate the existence of a medically determinable physical or mental impairment, the individual must be found not disabled at step 2 of the sequential evaluation process set out in 20 CFR 404.1520 and 416.920 . . . ."). Significantly, "[n]o symptom or combination of symptoms by itself can constitute a medically determinable impairment." *Id.* Symptoms

consist of a claimant's description of his or her alleged impairment.  20 C.F.R. § 404.1528(a).  In contrast, "signs" include "psychological abnormalities which can be observed."  20 C.F.R. § 404.1528(b).  In addition, "[p]sychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception."  20 C.F.R. § 404.1528(b).  "Laboratory findings" include "psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques."  *Id*.  The Sixth Circuit has advised that "[w]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology." *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989) (internal quotation marks and citations omitted).

"When there is evidence of a mental impairment documented by 'medically acceptable clinical and laboratory diagnostic techniques,' 20 C.F.R. § 404.1508, the regulations require the ALJ to follow a 'special technique' to assess the severity of the impairment, 20 C.F.R. § 404.1520a."  *Brooks v. Comm'r of Soc. Sec*., 531 F. App'x 636, 641 (6th Cir. 2013).  The ALJ will rate the degree of a claimant's functional limitation in four broad areas: the ability to "[u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself."  20 C.F.R. § 404.1520a(c)(3).  For these areas, the ALJ will rate the plaintiff on a five-point scale: "[n]one, mild, moderate, marked, and extreme."  20 C.F.R. § 404.1520a(c)(4).  If the degree of the claimant's limitations are rated as "'none' or 'mild,'" the ALJ will generally conclude that the plaintiff's impairments are "not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in

[claimant's] ability to do basic work activities. . ."   20 C.F.R. § 404.1520a(d)(1).

Nonetheless, where, as here, the ALJ determines that a claimant had a severe impairment at step two of the analysis, "the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence."   *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803, (6th Cir. 2003).   Instead, the pertinent inquiry is whether the ALJ considered the "limiting effects of all [claimant's] impairment(s), even those that are not severe, in determining [the claimant's] residual functional capacity."   20 C.F.R. § 404.1545(e); *Pompa*, 73 F. App'x at 803 (rejecting the claimant's argument that the ALJ erred by finding that a number of her impairments were not severe where the ALJ determined that claimant had at least one severe impairment and considered all of the claimant's impairments in her RFC assessment); *Maziarz v. Sec'y of Health & Hum. Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (same).

Finally, the ALJ's determination that a claimant has some mild impairment does not *require* inclusion of mental limitations into the RFC.   *See, e.g.*, *Little v. Comm'r of Soc. Sec.*, No. 2:14-cv-532, 2015 WL 5000253, at *13-14 (S.D. Ohio Aug. 24, 2015) (no error where ALJ did not include RFC limitations to address findings of mild mental limitations); *White v. Comm'r of Soc. Sec.*, No. 2:17-CV-1063, 2018 WL 5303060, at *5 (S.D. Ohio Oct. 25, 2018) (same); *Walker v. Astrue*, No. 3:11-cv-142, 2012 WL 3187862, at *4-5 (S.D. Ohio Aug. 3, 2012) (finding that substantial evidence supported the ALJ's determination that the claimant's mental impairments were mild enough not to warrant specific RFC limitations).   Severe or non-severe, an ALJ need only include limitations arising from an impairment where the impairment affects a claimant's capacity to work.   *See Griffeth v. Comm'r*, 217 F. App'x 425, 426 (6th Cir. 2007) ("The RFC describes the claimant's residual abilities or what a claimant can do, not what

maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities. A claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other." (internal quotation marks and citations omitted)).

Here, as set forth above, the ALJ concluded that Plaintiff had several severe physical impairments, but no severe mental impairments. (R. at 18-21.) In determining the severity of Plaintiff's depression, the ALJ completed a thorough analysis of the four areas of mental functioning, or the "paragraph B" criteria, and concluded that Plaintiff has mild limitations in concentration, persistence, or in maintaining pace (R. at 20), and no limitations in understanding, remembering, or applying information; in interacting with others; or in adapting or managing himself (R. at 19-20). The ALJ concluded that "[b]ecause the claimant's medically determinable mental impairment causes no more than 'mild' limitation in any of the functional areas, it is nonsevere (20 CFR 401.1520a(d)(1))." (R. at 20.) The ALJ further found that Plaintiff's depression did not cause more than "minimal" functional limitations and declined to include mental limitations in Plaintiff's RFC. (*See* R. at 18, 20, and 23.)

The undersigned finds that substantial evidence supports the ALJ's determination that Plaintiff's depression did not significantly limit his mental abilities to perform basic work activities. (R. at 18, 19-21.) The ALJ explained his reasoning as follows:

> At a psychological consultative examination in June 2015, the claimant was alert and oriented to person, place and time, his speech was normal and he appeared calm throughout the evaluation (Exhibit 12F). Moreover, the claimant reported improvement in his depression with medication in September 2017 (Exhibit 23F). While the claimant's representative submitted new psychiatric evaluations post hearing that appear to indicate more serious symptoms [of] depression, this evidence is so recent that it does not support that this condition has lasted at a severe level or impacted his functioning for at least twelve continuous months from the

date of onset (see SSR 82-52) (Exhibits 25F; 26F).   Moreover, the claimant's symptoms appeared to be exacerbated by four recent deaths in his family and since these are unusual stressors, do not necessarily support a conclusion that his more acute symptoms would be expected to last for 12 months or longer (Exhibit 26F). Furthermore, the new post hearing mental information contains reports by the claimant to evaluators that bear little relationship to his reports throughout the rest of the file and, thus, raise serious questions as to consistency and supportability (Id.).   For example, at an evaluation in September 2017, the claimant reported seeing UFOs and having auditory hallucinations (Exhibit 25F).   However, there are no prior reports of hallucinations in the record (Exhibits 1F-24F).   In fact, the claimant denied hallucinations at multiple prior examinations (Exhibits 5F; 6F; 12F).   Moreover, the claimant apparently failed to mention the purported hallucinations or delusions to his new treating provider in November 2017, as there is no mention of hallucinations or delusions in the treating provider's letter on November 1, 2017 (Exhibit 26F).   Additionally, the claimant commonly denied any psychiatric symptoms at medical examinations prior to the hearing date (Exhibits 4F; 5F; 22F).

(R. at 19.)

The undersigned finds that the ALJ appropriately considered that "there is very little evidence of psychiatric issues from the alleged onset date through the hearing date."   (R. at 19 (citing R. at 330-714).)   *See Griffith*, 582 F. App'x at 559 (explaining that a severe mental impairment must be shown by the medical evidence, not simply by the plaintiff's statement of symptoms).   As the ALJ explained, Plaintiff "commonly denied any psychiatric symptoms at medical examinations prior to the hearing date."   (R. at 19 (citing R. at 383-475, 741-45).) Indeed, aside from reporting symptoms of depression to his primary care provider on a couple of occasions, Plaintiff did not seek treatment for his mental health issues until the Fall of 2017. (*See* R. at 388, 391, 393, 400, 772, 773, and 755-771.)

The undersigned also finds that the ALJ appropriately considered the mental health records from the Fall of 2017, which were submitted post-hearing.   (R. at 19 (considering R. at 755-773).)   The ALJ found that although those records "appear to indicate more serious

symptoms [of] depression, this evidence is so recent that it does not support that this condition has lasted at a severe level or impacted his functioning for at least twelve continuous months from the date of onset (see SSR 82-52) (Exhibits 25F; 26F)." (R. at 19.) *See also* 20 C.F.R. 404.1509 (providing that a severe impairment must last for at least twelve continuous months). The ALJ noted that the symptoms reported in the post-hearing records appeared to be "exacerbated by four recent deaths" in Plaintiff's family, and that Plaintiff's complaints in these records "bear little relationship to his reports throughout the rest of the file and, thus, raise serious questions as to consistency and supportability." (R. at 19.) Substantial evidence supports the ALJ's conclusions regarding these medical records. For example, Plaintiff reported experiencing delusions and hallucinations on September 15, 2017, but by October 10, 2017, he denied delusions and hallucinations. (R. at 738, 771.) Further, on September 1, 2017, Nurse Practitioner Skubak noted that Plaintiff was not anxious or nervous and that he had normal mood, affect, behavior, judgment, and thought content. (R. at 747.) The ALJ also appropriately considered that once Plaintiff began a regimen of medication, he reported an overall improvement in his depression. (R. at 19 (citing R. at 746-49)); (*see* September 1, 2017 Treatment Note, R. at 747 (noting that Plaintiff has had "some depression for years" and that "cymbalta[ ] has improved this overall")).

The undersigned finds that the ALJ reasonably considered and weighed the medical opinion evidence in reaching her step-two conclusions. The ALJ specifically adopted the state-agency reviewing psychologists' opinion that Plaintiff's depression is non-severe and that Plaintiff has "no limitations in social functioning and mild limitations in concentration, persistence or pace." (R. at 21.) The ALJ explained that these opinions are "generally

consistent with the overall evidence, including the [Plaintiff's] self-reports of daily functioning . . . ." (R. at 21.) *See* 20 C.F.R. § 416.927(c)(4) (identifying "consistency" as a relevant consideration when evaluating a medical opinion). The ALJ also reasonably assigned "great weight" to Dr. Olenick's opinion that Plaintiff was "unlikely to demonstrate problems in understanding, remembering and carrying out instructions in a work setting or responding appropriately to supervision and coworkers." (R. at 21.) The ALJ explained that these opinions were "generally consistent with the overall evidence including the [Plaintiff's] reports that he regularly goes out, lives with others and goes to the grocery store." (*Id.*) *See* 20 C.F.R. § 416.927(c)(4).

Next, the ALJ reasonably assigned "little weight" to Dr. Olenick's opinions that Plaintiff "may experience difficulty in responding appropriately to work pressures" and that he is "expected to demonstrate limitations" in maintaining attention, concentration, persistence and/or pace to perform simple tasks, finding that these opinions were not supported by the overall evidence of the record. *See* 20 C.F.R. § 416.927(c)(3)-(4) (identifying "supportability" and "consistency" as relevant considerations when evaluating an opinion). For example, with respect to Plaintiff's ability to respond appropriately to work stress, the ALJ concluded that Plaintiff had no limitations in this area, as Plaintiff cares for his dog, tries to cook, drives a car, and generally has no problem with grooming or hygiene. (R. at 20.) Further, Dr. Olenick's own report provides that Plaintiff identified no difficulty in dealing with workplace stress and that "[h]e has adequate social support and appeared to cope appropriately with stress during the evaluation." (R. at 539.) With respect to Plaintiff's ability to concentrate, persist, and maintain pace, the ALJ explained that Plaintiff's treating sources did not note that he was distracted or

confused (R. at 21 (citing R. at 383-436; R. at 750-54; R. at 755-71)), and that Plaintiff drives

daily, "which can be considered a complex task that requires the making of continuous

decisions/judgment calls" (*id.* (citing Hearing Testimony)).   Elsewhere in the decision, the ALJ

considered that Plaintiff is "able to concentrate sufficiently to drive every day or every other day,

use an I-pad and watch TV most of the day."   (R. at 20.)   The ALJ concluded that, although

Plaintiff may have some limitations in his ability to concentrate, persist, and maintain pace, the

overall evidence demonstrates that his limitations "are mild at the most."   (R. at 21.)   The

undersigned finds that the ALJ reasonably discounted Dr. Olenick's opinions that Plaintiff

"may" experience difficulty in responding to work pressures and "is expected to demonstrate

limitations" in maintaining attention, concentration, persistence and/or pace.[2]

In addition, contrary to Plaintiff's contentions, Dr. Olenick's diagnosis of moderate major

depressive disorder with anxious distress does not demonstrate that Plaintiff's depression more

than minimally limits his ability to perform work.   (Pl.'s Statement of Errors at 7, ECF No. 8.)

This diagnosis does not require the conclusion that Plaintiff had a *severe* mental impairment and

does not establish that Plaintiff was significantly limited in performing basic work activities.

*See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of [the condition] .

---

[2]The undersigned notes that Dr. Olenick's opinions are vague insofar as that he fails to explain the degree or nature of Plaintiff's purported functional limitations.   Indeed, although both Drs. Olenick and Gebhart found that Plaintiff tended to lose his train of thought and/or suffer from confusion, their opinions fail identify or explain how these findings translate into limitations, if any, on Plaintiff's ability to perform basic work activities.   Notably, both state-agency reviewing psychologists considered Dr. Olenick's report and assessed it "Great Weight" in rendering their opinions.   (R. at 92-106, 114-121.)   Despite reviewing Dr. Olenick's report, they concluded that Plaintiff's depression was non-severe; that he had only mild limitations in his ability to concentrate, persist, and maintain pace; and declined to find mental limitations in the RFC.   (R. at 92-106, 114-121.)

. . says nothing about the severity of the condition." (citation omitted)); *Despins v. Comm'r of Soc. Sec.*, 257 F. App'x 923, 929-30 (6th Cir. 2007) ("The mere existence of . . . impairments . . . does not establish that [the plaintiff] was significantly limited from performing basic work activities for a continuous period of time.").

The ALJ also reasonably discounted the opinions of Plaintiff's psychologist, Dr. Gebhart. (R. at 21.)   The ALJ explained that he assessed "little weight" to Dr. Gebhart's opinion that Plaintiff "was struggling to maintain his daily life" and that his "major depression has persisted for over 3 years" because Dr. Gebhart "issued this statement after seeing and/or treating the claimant only once."   (R. at 21 (citing R. at 772-73).)   The ALJ appropriately considered that Dr. Gebhart rendered his opinion after treating Plaintiff only one time.   *See* 20 C.F.R. § 416.927(c)(2)(i) (identifying the length of the treatment relationship and the frequency of examination as relevant factors in assessing a medical opinion); *see also Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (finding that the treating physician doctrine does not apply, and a medical opinion is "entitled to no special degree of deference" where the physician had only treated the plaintiff on one occasion).   Similarly, the ALJ reasonably discounted Dr. Gebhart's opinion because he had no personal knowledge of Plaintiff's mental health history prior to rendering his November 2017 opinion.   *See* 20 C.F.R. § 416.927(c)(2)(ii) (providing that "the more knowledge a treating source has about [plaintiff's] impairment(s) the more weight [the ALJ] will give to the source's medical opinion"); *see also Mitchell v. Comm'r of Soc. Sec.*, 330 F. App'x 563, 569 (6th Cir. 2009) ("A doctor's report that merely repeats the patient's assertions is not credible, objective medical evidence and is not entitled to the protections of the good reasons rule.").   Finally, the ALJ reasonably found Dr. Gebhart's opinions "inconsistent with the

overall evidence of record which shows virtually no evidence of any psychiatric issues from the alleged onset date through the hearing date." (R. at 21.) As set forth above, the record contains very little evidence of Plaintiff's mental health conditions prior to the Fall of 2017, and there is no evidence that his depression persisted at a severe level or impacted his functioning for the requisite durational period. (R. at 330-773.) Accordingly, the undersigned finds no error in the ALJ's consideration and weighing of the opinion evidence at step two.

Based on the foregoing, the undersigned finds that the ALJ properly considered Plaintiff's mental impairments and reasonably concluded that limitations attributable to his mental impairments were not warranted in the RFC. (*See* R. at 20 (stating "the following residual functional capacity assessment reflects the degree of limitation [the ALJ] ha[s] found in the 'paragraph B' mental function analysis").) The ALJ thoroughly explained her rationale for finding that Plaintiff's mental impairments did not cause more than minimal functional limitations, which included consideration of Plaintiff's allegations and hearing testimony; mental health treatment records; activities of daily living; lack of treatment history; and the opinion evidence. (*See* R. at 19-21.) The undersigned therefore concludes that the ALJ properly considered Plaintiff's mental impairments in assessing his RFC and that substantial evidence supports the ALJ's decision to omit non-exertional limitations attributable to his mental impairments.

Consequently, Plaintiff's challenge to the validity of the hypothetical question posed to the VE likewise lacks merit. The regulations permit an ALJ to use the services of a vocational expert at step four to determine whether a claimant can do his past relevant work given his RFC. 20 C.F.R. § 404.1560(b)(2). "In order for a vocational expert's testimony in response to a

hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010). "[I]n formulating a hypothetical question, an ALJ is only required to incorporate those limitations which he has deemed credible." *See Gant v. Comm'r of Soc. Sec.*, 372 F. App'x 582, 585 (6th Cir. 2010) (citations omitted); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact."); *Infantado v. Astrue*, 263 F. App'x 469, 477 (6th Cir. 2008) (holding that the failure to incorporate limitations into the hypothetical question that the court gave no weight was not in error). Here, the ALJ's hypothetical question to the VE incorporated the limitations that she found to be credible and supported by the record evidence. As set forth above, substantial evidence supports her decision to omit non-exertional limitations. The ALJ therefore did not err in relying on the VE's testimony.

In sum, the undersigned finds that for all of the reasons set forth above, substantial evidence supports the ALJ's determination that Plaintiff had only mild limitation attributable to his mental impairments and that he failed to demonstrate that his mental impairments caused more than a minimal limitation on his ability to do basic work activities. Although evidence in the record may support an alternative finding, the ALJ's findings were within the ALJ's permissible "zone of choice" and the Court will not re-weigh the evidence. *See Blakley*, 581 F.3d at 406. Accordingly, it is **RECOMMENDED** that Plaintiff's first contention of error be **OVERRULED**.

**B.     The ALJ's Consideration of Dr. Osbourne's Opinions Regarding Plaintiff's Physical Impairments**

Plaintiff next contends that the ALJ failed to provide good reasons for discounting the opinions of his treating physician, Dr. Osbourne.    The Commissioner counters that the ALJ properly explained the weight she gave to Dr. Osbourne's opinions and that her decision to discount his opinions was supported by substantial evidence.    The undersigned agrees with the Commissioner and finds this contention or error to be without merit.

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case.    20 C.F.R. § 416.927(c).    Where a treating source's opinion is submitted, the ALJ generally gives deference to it "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical filings alone . . . ."    20 C.F.R. § 416.927(c)(2); *Blakley*, 581 F.3d at 408.    If the treating physician's opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight."    20 C.F.R. § 404.1527(c)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements.    *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).    Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors-namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion

with the record as a whole, and the specialization of the treating source-in determining what weight to give the opinion.

*Id*. Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 416.927(c)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 Fed. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242).

There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision. *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010) (indicating that, under *Blakley* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision).

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(d). Although the ALJ will

consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance.   20 C.F.R. § 404.1527(d); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

As discussed above, the ALJ assigned "some" weight to Dr. Osbourne's opinions that Plaintiff "is unable to lift greater than 20 pounds and has difficulty walking up stairs, given the [Plaintiff's] positive EMG for lumbar radiculopathy, the claimant's unsuccessful attempt at working as a valet and the claimant's reports of difficulty standing (Exhibits 15F; 18F)."   (R. at 27.)   By restricting Plaintiff to sedentary work, the ALJ actually imposed greater limitations on Plaintiff's ability to lift than those opined by Dr. Osbourne.   *See* 20 C.F.R. § 404.1567(a) ("Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.").   The ALJ also limited Plaintiff to occasional climbing of ramps or stairs; never climbing ladders, ropes or scaffolds; and no work around unprotected heights.   (R. at 23.)   Thus, the ALJ accounted for Dr. Osbourne's opinions that Plaintiff was unable to lift more than 20 pounds and that he has difficulty walking up stairs.

The undersigned also finds no error in the ALJ's decision to assign "little" weight to Dr. Osbourne's opinions that Plaintiff requires a cane and that Plaintiff is unable to stand and/or sit for over one (1) hour at a time.   Although Plaintiff maintains that the ALJ failed to give good reasons for assigning "little weight" to these opinions, the ALJ provided the following lengthy discussion of how she arrived at her determination:

> However, I give little weight to the treating physician's opinion that the claimant requires a cane, as the evidence of record does not consistently reflect the claimant's use of a cane or any prescription by an acceptable medical source for a cane.   For example, there is no notation that the claimant was using a cane at a neurology visit or at a visit to the Arthritis Center in April 2015 (Exhibits 6F; 8F). The claimant has failed to produce any other evidence to satisfy his burden to show

medical necessity for a cane as described in 96-9p (Hearing Testimony; Exhibits 1F-26F).   I also give little weight to the opinion that the claimant is unable to stand and/or sit for over 1 hour at a time, as the opinion is not accompanied by any evidentiary support or explanation (Exhibit 15F).   Moreover, the opinion appears to be based on the claimant's subjective complaints rather than objective findings.  Medical examination findings of record do not consistently demonstrate significant weakness, sensory deficits or regular falls leading to emergency room treatment or causing other injuries.   Although neurology notes sometimes indicated some weakness on testing, the claimant's motor strength was mostly 4/5 or 5/5 at other examinations (Exhibits 13F; 15F; 17F).   I also note that at some visits where 4/5 strength is documented, it is described as "give-way" weakness which suggests an unreliable result or less than full effort (e.g. 13F/1).[3]   A recent examination found no weakness or sensory deficit (25F/3).

(R. at 27 (footnote added).)   Thus, the ALJ articulated the weight she afforded these opinions and properly declined to afford them controlling weight on the grounds that they were not supported by the objective findings in the record, are inconsistent with the record, and are based on Plaintiff's subjective complaints rather than objective findings.   *See* 20 C.F.R. § 404.1527(c)(2) (identifying "supportability" and "consistency" with the record as a whole as relevant considerations when evaluating a treating physician's opinion); *Blakely*, 581 F.3d at 406 (quoting SSR 96-2p, 1996 WL 374188, at *2 (July 2, 1996)) ("'[I]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if . . . it is inconsistent with the other substantial evidence in the case record.'"); *Tate v. Comm'r of Soc. Sec.*, 467 F. App'x 431, 433 (6th Cir. 2012) (finding that the ALJ provided good reasons for discounting a treating physician opinion where the ALJ, in part, found the treating physician's assessment "to be based on [plaintiff's] subjective complaints, without sufficient support from the objective clinical or neurological findings").

Furthermore, substantial evidence supports the ALJ's decision to discount Dr.

_____

3  The ALJ appears to have erroneously cited to 25F/3 instead of 24F/3.

Osbourne's opinions that Plaintiff needs a cane and is unable to sit and stand for more than one hour at a time. The undersigned first notes that Dr. Osbourne did not specifically opine that Plaintiff requires a cane. Instead, his report indicates that Plaintiff used a cane, not that he was prescribed a cane or otherwise required one. (R. at 559-60.) As set forth in Social Security Ruling 96-9p,

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.

SSR 96-9P (S.S.A. July 2, 1996), 1996 WL 374185. Here, Plaintiff has not provided medical documentation that sufficiently establishes a need for a cane or describes the circumstances for which it is needed. Further, as the ALJ points out, the medical records do not consistently note that Plaintiff used a cane. (R. at 27 (citing 476-77, 484-89)). The undersigned therefore finds no error in the ALJ's decision to omit limitations related to use of a cane.

Substantial evidence likewise supports the ALJ's decision to discount Dr. Osbourne's opinion that Plaintiff is unable to stand and sit for over one (1) hour at a time because it was "not accompanied by any evidentiary support or explanation." (R. at 27, 560.) *See Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (finding that an ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation"). The ALJ also considered that Plaintiff's medical examination findings often demonstrated normal muscle strength (R. at 542-53; 559-598; 634-56), and that a recent examination found no weakness or sensory deficit (R. 752.) Elsewhere in her opinion, the ALJ

thoroughly discussed the objective medical evidence and examination findings and concluded that they do not fully support the extreme limitations alleged by Plaintiff.   (R. at 24-26.)   Thus, it was reasonable for the ALJ to discount Dr. Osbourne's opinions to the extent they were based on Plaintiff's subjective complaints rather than the objective findings.   *See Tate*, 467 F. App'x at 433 (discounting a treating physician's opinion where the "assessment appeared to be based on [plaintiff's] subjective complaints, without sufficient support from the objective clinical or neurological findings").   Notwithstanding the foregoing, at the hearing, Plaintiff himself testified that he is able to stand and sit for longer than one hour at a time.   (*See* R. at 77-78.) *See Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 550 (6th Cir. 2014) (holding that an ALJ reasonably discounts medical source's opinion where it contradicts with the claimant's own testimony).

Although Plaintiff points to some evidence in the record that weighs against the ALJ's findings, the existence of such evidence does not mean that the ALJ's decision to discount Dr. Osbourne's opinions was not supported by substantial evidence.   *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) ("The substantial-evidence standard allows considerable latitude to administrative decision makers.   It presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.") (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

Based on the foregoing, the undersigned concludes that the ALJ provided good reasons, supported by substantial evidence, for discrediting the opinions of Dr. Osbourne, and did not violate the treating physician rule or otherwise err in her assessment of his opinions.    It is therefore **RECOMMENDED** that Plaintiff's second contention of error be **OVERRULED**.

## VI.    DISPOSITION

From a review of the record as a whole, the undersigned concludes that substantial evidence supports the ALJ's decision denying benefits.   Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## VII.    PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).    A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made.   Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.   28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.   *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

_/s/ Chelsey M. Vascura_
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE